We'll hear argument next in Case 12-1163, Highmark v. Allcare Health Management System. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. The Federal Circuit applied a de novo, without deference, standard to objective baselessness in Section 285 cases. That was wrong for three reasons. First, this Court has already held that a unitary abuse of discretion standard should be applied in closely analogous cases in the Pierce and Cooter cases. Those cases, like this one, were ancillary appeals over attorneys' fees concerning the supervision of litigation, which is precisely what Section 285 addresses. Second, the text of the Act, and in particular its key words, may, in exceptional cases, imbue district courts with discretion. Indeed, up until this case, that was the way the Act applied for 60 years. And third, the other factors this Court has looked to, such as a lack of law clarifying benefits, the positioning of a decision-maker, efficiency in avoiding distortion, cut in favor of unitary abuse of discretion review. For those reasons, the case for such review is even stronger here than it was in Pierce and Cooter. In Pierce and Cooter, this Court looked to for — in Pierce, for example, this Court looked to EJA and determined that, even though the text of the statute didn't compel a result, nonetheless, unitary abuse of discretion review was the appropriate standard. And here Roberts, how does abuse of discretion work with respect to a pure legal question? I think this Court answered that both in Pierce and Cooter. It said if it's a truly pure legal question, then it is a — that it is a — that there isn't deference given to that in that circumstance. Now, here the question presented is objective baselessness. And in the context of Section 285 determinations, that kind of retrospective look, was the attorney acting reasonably or not, Pierce and Cooter both say that's something that is always context-dependent. It always depends on the facts. Kagan Well, could you explain that to me a little bit, Mr. Katyal? In a case in which the district court just uses an erroneous claim construction, you would concede that that's a pure legal question, so that would be an abuse of discretion? Katyal We would not, Your Honor. So certainly on the merits, if the question of claim construction went up to the Federal Circuit, as it did here, for example, in 2009, the question there would be there would be no deference under the Federal Circuit's precedent, most recently Friday in the Lightning Ballast case. But when the question is a 285 question, the retrospective look at objective baselessness of which claim construction forms a part. Kagan No, but I guess my first question was just if the district court says here's the appropriate claim construction, and in saying that, it's wrong. Is that a legal question? Katyal As it goes up to the Federal Circuit under existing precedent, they treat that as a legal question. We think this Court's decision in Markman suggests otherwise. It said it was a mixed question, a mongrel question of law and fact. And so if the Court were ever to get into that ultimate question on the merits, we think that the Markman analysis would control. But here the question is a 285 question. Kagan Okay. So let's just assume for a moment that an erroneous claim construction would be a mistake of law. Let's just assume that. And I understand you say that there's a question. But if that's right, why is it not also true that a judge's statement that a litigant that a litigant's claim construction was unreasonable is not a similar mistake of law? Katyal For exactly the reason that I think Pierce says, which is the question in a retrospective attorney fee case is not what the – is not what was the law. It's rather was the position that the party took reasonable. And so, for example, in Pierce, the question was under a certain statute, EJA, do the words shall and authorized, do they mean mandatory? And Justice White in dissent said that's a pure legal question. That's something courts of appeals deal with all the time. District courts don't deal with it. We should give no deference to that. And Justice Scalia's opinion for the Court said no, even there, that is something we're looking at. That legal claim is situated within the particular contours of the case overall in deciding was that a reasonable argument. Kagan. Kagan. But isn't the main thing a judge doing when it says that a claim construction is unreasonable is essentially measuring the delta between the actual, the correct claim construction and the mistaken claim construction? And doesn't that seem to be, again, assuming that the claim construction itself is a question of law? Doesn't that itself seem to be a question of law? We agree that's one of the things the judge is doing there, but it's not the only thing. Justice in Pierce, certainly the Court was interpreting the meaning of the statute, but they were doing it within the context of litigation. This case, I think, is a helpful example, to remove it from the abstract and just bring it down to here. You've heard and you've read the brief on the other side saying this is a claim construction dispute. It's not a claim construction dispute. What the district court found seven different times when it imposed fees is that this is actually a dispute about infringement and their inability to come up with any theory whatsoever for why there was an infringement violation. And what I think the logic of Pierce and Cooter is, is that if you give clever appellate lawyers, like my friend, the ability to go to a court of appeals and repackage what were essentially factual claims and claim they're legal, here, claim construction, then you're going to waste an enormous time and resources of the Federal Circuit as they seek to disaggregate is this really, truly factual or is this really legal. And you wouldn't want to have that, I think, for the reasons that this Court has said repeatedly, which is the whole goal in attorney fees cases is to avoid a second major litigation. And that's precisely what the Federal Circuit did here. It minted a whole new theory under this de novo, without deference standard. And that's the harm. That's the evil that I think all of the attorney fees cases are trying to address. I would also say that, you know, even if beyond Pierce, beyond Pierce, we do think this is essentially Pierce plus, that this is a case in which the text of the statute and its key words may, in exceptional cases, give the Court, I think, further reason to return the standard to the way it has always been interpreted for 60 years. And for 60 years, from 1946 to 1952, abuse of discretion, deferential review was used in objective baselessness cases. In 1952, the Congress codified essentially those, that interpretation. From 1952 to 1982, the regional circuits used it, like the D.C. Circuit and the Otterker case. After 1982, the Federal Circuit used it time and again in cases such as Enet. It's this case that really is a dramatic departure from the way Section 285 has been interpreted and, indeed, the way all attorney fee litigation has been interpreted. Ginsburg. Ginsburg. If we undo the case that the district court denies fees, there would be slim to no chance of getting that overturned on appeal if you're dealing with the abuse of discretion. We think that it is hard in that circumstance, and that's the one-way ratchet. We don't place a lot of emphasis on that in our brief. It's our last argument. But we do think essentially it is hard to overturn a district court's decision not to award fees, whereas under the Federal Circuit's interpretation, it's really quite easy for the Federal Circuit to mint some new theory as to why the position was reasonable that the attorney took. And, Justice Breyer, you said in the last argument, you said clever patent attorneys can always come up with a colorable argument. And you're referring at the district court today. Ginsburg. And if you leave it to the district court that way, and district court denies fees, isn't there a risk of large disparities from district judge to district judge? One will say, yes, I think that this was uncommon, not right on the mind, so I'm going to award fees, and another one will say, no, I think it's pretty standard, so I won't award fees. We do think implicit in an abuse of discretion standard, or Congress committing this to district court discretion, will be some variation. We think this Court answered that problem in Kuhn, I think, most particularly in a case where the stakes were, you know, not to belittle this case, but the stakes were even higher there, criminal sentencing. And what the Court said is, yes, there will be some disuniformity, but district court judges are better able to determine the mind-run case than will the court of appeals, because they're able to assess the entirety of the litigation rather than one piece of it. Sotomayor, if we were to overrule the Brooks Furniture Standard, you just heard the argument where that issue is being presented to us in Octane, if we were to do that, how would that affect this case? Wouldn't it essentially moot the question because you wouldn't have this objective reasonableness test controlling the outcome? Well, it would certainly depend on how you did it, but our brief at pages 34 to 37 say that if you adopt any variant of the Petitioner's theory in Octane, the case here only gets stronger. You have to, I think, ultimately reverse what the Federal Circuit said at page 9A of the Petition Appendix, which is objective baselessness must be determined de novo. We think that that's wrong for all the reasons we've been talking about, and even were you to change the standard in Octane, so long as objective baselessness formed any part of the section 285. Sotomayor, does that become a pure question of law? We think it never becomes a pure question of law. There are — we don't doubt that, to answer the Chief Justice's question from before, that we don't doubt that there are some circumstances in which there are pure questions of law in section 285 cases. For example, what does the patent clause in the Constitution mean, or what does a particular statute mean? But when you're dealing with, for example, claim construction, that looks very much like the EJIA question that the Court was dealing with in Justice Scalia's opinion in Pierce. It's a retrospective collateral question about how reasonable was this argument at this particular time, in this particular case, with these particular parties, with this particular patent. And what Justice Scalia's opinion in Pierce says is that's not the type of question that we should be spending a lot of court of appeals resources on. That's something that is dealt with on the merits, as it was here. The Federal Circuit dealt with the question on the merits in 2009, but not something that you should have a second major litigation over. If there are no further questions. Roberts. Thank you, counsel. Mr. Fletcher. Mr. Chief Justice, and may it please the Court. In this morning's first case, you will decide what principles should guide a district court's award of attorneys' fees under section 285. Whatever standard you choose to adopt in that case, we believe that a district court's application to the particular facts of a case before it ought to be reviewed under a unitary abusive discretion standard. That approach is consistent with this Court's repeated statements that decisions about the supervision of litigation ought to be reviewed under a deferential standard. And in this particular context, it's also supported by the text and history of section 285, by 60 years of consistent appellate practice, and by the same sorts of practical considerations that led this Court to adopt a similar approach to very similar questions in Pierce and in Cooter and Gell. I'd like to start, if I could, by focusing on a point that hasn't come up so far in the argument, which is we've heard a lot about why district courts are best situated to make the determination in a particular case that they've lived with often for years at a time of whether or not a particular litigating position is unreasonable. And we think that's true and a very good reason to accord deference here. But we think another good reason to accord deference in this context is that applying de novo review requires a substantial expenditure of appellate resources. I think this case is a good example. The Federalist Circuit affirmed the district court's decision on the merits in an unpublished decision and, in fact, without written opinion. But when it reviewed the district court's award of fees under a de novo standard, it was required to engage in a lengthy analysis that produced a lengthy written opinion. And we think applying a de novo standard and requiring appellate courts, and the Federalist Circuit, to engage in that kind of review encourages collateral appeals and encourages the expenditure of resources on decisions that don't actually produce law. Alito, you can make that argument with respect to every legal issue that's raised on appeal. Well, if you have to decide whether the lower court was right, that's a lot of work. But if all you have to decide is whether the lower court abused its discretion in deciding what the law means, what the lower court said it means, that's a lot less work. So that argument is a strange argument, unless there's something really special about the attorneys' fees context. And I guess that's your argument. There's something really special. But why should it? When you've got a lot of money involved, why should we say this is collateral litigation, even though it involves millions of dollars more than the claim in many other types of cases? So let me say a couple of things about that. And one is, I think ordinarily when an appellate court applies a de novo standard and determines what the right answer is, that has benefits not just for the particular litigants before it, but also in clarifying the law for everyone going forward. But what the Court said in Pierce and in Cooter & Gell, and what's also true here, is that when the question that the appellate court is answering is not what is the law actually, but rather what could a party, when it initiated this case and continued to litigate it several years ago, could that party have reasonably believed the law to be, that doesn't yield the same sort of law-clarifying benefit. In fact, in Pierce, this Court said those sorts of determinations are never going to be made clear under any sort of superstandard. Alitoson It can clarify the law. What's the difference between that situation and, let's say, deciding an issue of qualified immunity in a civil rights case or applying the Edpa in a habeas case? The Court can say this is what the law is, and then after that is the second step, determine whether a particular interpretation of the law was reasonable. You could do the same thing here. Clement A court could do that here. And I suppose the Federal Circuit, if the case came to it on the question, was the district court, did it abuse its discretion, or did it get it right in deciding that the party's position was unreasonable, the court, Federal Circuit, could decide the underlying question itself and then decide whether or not the district court was correct in concluding that a party's position was reasonable or unreasonable. But we think there's good reason not to do that here, and we think that in these contexts, unlike in qualified immunity, unlike in Edpa, the district court has particular expertise in the case and a long experience with the case, and that requiring the Federal Circuit to engage in a thorough review of the entire record of the litigation and the entire proceedings of the litigation imposes a burden that just isn't justified. Alitoso, I'm just wondering, if you put together your two arguments about what the standard should be and what the standard of review should be, whether there really is going to be any meaningful review of what district courts do in this situation. Maybe you could just describe for me what an appellate decision would look like saying that, applying the totality of the circumstances, the district court abused its discretion in awarding or not awarding fees. What would an appellate court say? So I think one thing that an appellate court might say, as Justice Kagan alluded to earlier, is that if the district court has based its fee award on a misunderstanding of the law, if it got the claim construction wrong, if it misinterpreted the relevant patent statutes, that would obviously be an abusive discretion. But I think even if the district court correctly conceived of the law, abusive discretion review still leaves room for an appellate court to say that although the district court had a wide range of options and has flexibility, this particular decision on these particular facts strays too far from that range. I think courts of appeals do that in the sentencing context. They do that in other contexts where they review district court decisions for abusive discretion. And we think that performing that role, which abusive discretion review comfortably accommodates, leaves plenty of room for the Federal Circuit to rein in any outlier district court decisions. I think another point that's useful to keep in mind is the extent to which applying a de novo standard of review encourages collateral appeals. I think a theme of this Court's decisions about attorneys' fees has been that a dispute over fees should not give rise to a second major litigation. And I think applying a de novo standard encourages that both in encouraging parties to take marginal appeals and also in leading to fights about which parts of the district court's decision are factual, which parts are legal, which standard of review applies to different parts of a district court's decision. I think all of those things are added to the burden of the collateral fee litigation in a way that doesn't – isn't justified by the benefit that de novo review provides. The last point that I think I'd like to leave you with is the notion that I think there – Justice Alito, earlier you suggested that the Federal Circuit has expertise in patent law and special expertise in patent law. And I frankly think that's the strongest argument that the other side has. But I'd urge you to look at Judge Moore's dissent from the denial of rehearing en banc in this case, where she and four of her colleagues on the Federal Circuit explained that when you're asking whether or not a party's litigating position was objectively reasonable, the Federal Circuit's expertise in patent law actually isn't the relevant expertise. And she explains at length, and she cites a number of prior Federal Circuit decisions recognizing as well, that the district court who's lived with the case and who's decided on the merits and who's seen the parties and has spent sometimes years with the parties is really in a better position to decide whether or not the party's litigating position was reasonable. For that reason, if the Court has no further questions, we'd urge it to vacate the judgment below and remand the case to the Court of Appeals with instructions to consider the district court's award of fees under the correct standard. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. Dunner. May it please the Court and Mr. Chief Justice. I've got that reversed. My apologies. Allcare agrees that Pierce and Cooter are highly relevant to this case, but we feel that those cases support Allcare and not Highmark, and let me explain. The Pierce case starts out by talking about the traditional rule. The traditional rule is that legal issues are a reviewed de novo. And this Court's opinion in the Ornelas case reinforces that for probable cause cases. So the question is, why didn't the Federal – why didn't the Supreme Court apply the traditional rule in Pierce and in Cooter? And the answer certainly is not that they were fee cases, because the Pierce case makes absolutely clear that it was not enunciating a general rule for fee cases. It said it couldn't enunciate a general rule. On the other hand, what the Court did was it looked at the specifics involved, which was the tribunal best qualified or best situated to decide the issues in the case, and it dealt specifically with three different points. One, in the Pierce case, the Aegis statute was involved, and the text of that statute had been changed from 1946 to 1952. It originally used the word discretion. It changed it to exceptional case. My colleagues on the other side argue that the word may suggests discretion. Well, the word may is not tethered to exceptional. It's tethered to awarded fees. And everybody agrees that the district court has discretion in terms of what fees are awarded. Sotomayor, even if I assumed that ultimately the claim that you made might have been – might have had a basis, like the Court below agreed, as I read the district court's decision, it wasn't basing its decision merely on that. What it was basing it on, and it goes through a whole laundry list of things that it thought constituted abusive litigation, very little pre-filing investigation, continuous switch of claims because of the lack of that investigation, pursuing a theory that your expert didn't even agree with, that all sounds to me like a factual basis basically saying this litigation was abusive. And I don't understand how that doesn't feed into the objective unreasonableness, meaning that if you had done the investigation you should have, you may have had a claim or thought you had a claim, but you would have learned much earlier that even your expert disputed things and you're likely not to have brought the suit. That's how I read the district court's decision. Dreeben, Your Honor, with due deference, there were four issues, actually five, because Allcare lost on one of the issues, the 102 claim. There were four issues that went up to the Federal Circuit plus the one we lost on. None of them involved pre-filing investigation. What happened was the district court wrote a long opinion based on Rule 11. We asked for reconsideration. The district court dropped all the charges against the lawyers, left the charges against Allcare. And if you read the Federal Circuit opinion, starting at the Appendix 19A and going to the pages, you'll see there were four issues, one of which was not pre-filing investigation, none of which involved the points you're making. There were four issues. Two of them involved claim construction, and the third one involved claim construction, the one we lost on. The fourth one was whether or not the Allcare had a right to rely on what happened in the Eastern District of Virginia, in which we had the same claim against a different party, and the two courts reached different conclusions on the same issue, on the same claim, which alone should have found that it was objectively reasonable, but was not. And the last one was whether or not alleged misconduct, misrepresentation to the Western District of Pennsylvania before the case was transferred, whether that was sanctionable. And the case law made clear that was a legal question. The case law made absolutely clear that you cannot look at conduct before another tribunal to decide whether a different tribunal should sanction you. Every one of those issues, the three claim construction issues, were legal issues, and the whether the — whether they could rely on res judicata or collateral estoppel based on the Eastern District of Virginia case was a legal issue, and the whether the alleged misconduct in Pennsylvania could be sanctionable was also a legal issue. We had no factual issues in this case. And I suggest you look at the pages starting with 19A and read the Court's opinion, and they basically said, contrary to Mr. Cattial's comment, the issue was one of claim construction. It was not one of infringement. There was a special master in the case, and the special master first gave a claim construction favorable to all care, and then in a summary judgment hearing, he changed his opinion, and Judge Dykes' opinion for the majority of the Court basically notes this, that he changed his view, and he came out with a different view. But the issue was, is, and always a claim construction issue, and even they concede that claim construction issues are reviewed de novo. Now, a point has been made about pure issues of law and impure issues of law. They don't use impure, but I assume that's the converse of a pure issue of law. And they say that only certain kinds of things are pure issues of law, and it does not include objective baselessness. Well, I suggest that the Court look at Scott v. Harris. Scott v. Harris says expressly that claim that objective reasonableness is a pure issue of law reviewed de novo when it's separated from its factual components. And it is our position that the factual components are reviewed deferentially. We're not arguing to the contrary. All we're saying is when you've got a legal issue, the best court situated to deal with the legal issue and to avoid problems like we had with the Eastern District of Virginia on the same claim, same issue, going a different way from the Northern District of Texas, will be avoided. The whole purpose of the formation, this was discussed in the Octane case, the whole purpose of the formation of the Federal Circuit was to provide uniformity, to provide predictability. When you've got 94 district courts and hundreds of district court judges going different ways, some of which are friendly to patents, some of which are hostile to patents, the best tribunal to rule on the patent, on the legal issues, the patent issues, is the Federal Circuit. Roberts. Well, but then it reads 4 to 3 on one issue, then it has, as in this case, conflicting cases within its own docket. So I'm not sure it's succeeding in bringing about uniformity. Your Honor, I apologize. I missed that point. Well, I'm just saying the point, you're quite correct, the Federal Circuit was established to bring about uniformity in patent law, but they seem to have a great deal of disagreement among themselves and are going back and forth in particular cases in this area specifically about what the appropriate approach is. Your Honor, they do have disagreement. This was a 6-5 case. And there are other cases. The case of Lighting Ballast was just decided was a 6-4 case. And the Akamai case, which was coming up in April, was a 6-5 case. The fact is that you still have a single tribunal. That's the way a court should operate. When they go en banc, you get a divergence of views. It's like the Supreme Court. You have lots of dissenting opinions, concurring opinions, but it's a single body. And a single body that has jurisdiction over all the 285 cases is better situated than to have lots of district court judges ruling on questions of law. We're only talking about questions of law. Well, they do sometimes. I mean, there are a lot of areas of the law where they do. I mean, Holmes thought reasonableness, given undisputed facts, is really a question of law. Probable cause matters are really questions of law if the facts are undisputed. Cases all over the lot, there was a case we have, I saw once, it said, is an eclectus parrot a wild bird for purposes of a statute that says wild birds cannot be imported? And the judges there said, well, there's this characteristic, factual, da, da, da, and there's this characteristic, really, if you really put your mind to it, you'd have to say that was legal, does wild mean in the country of origin or in the country of import? You know, so you could separate it, but there are many, many areas of the law where judges don't bother to separate the two things, and isn't claim construction like that? I mean, you have a case, and the claim construction always has in mind what this And so the judge is always looking at that and doesn't often separate law and fact. I mean, you know this area better than I do. But I'm thinking, oh, I guarantee. So I'm thinking that maybe claim construction is like that very often. Factual matters are there, legal matters are there, and judges cannot always separate the one from the other, or even if they could, they don't feel it's worth the effort. Your Honor, there are times when it may be difficult to separate facts from law. And in the Markman case, the Court talked about it as being a mongrel type of situation. But the fact is that in many cases, you can separate them, and moreover, the fact that it's a mixed question of fact and law, which has been bandied around in the briefs, does not itself determine whether it's de novo or discretionary, as has been met as was mentioned specifically in the Pierce case. So the fact is, you're still better off, which is the best tribunal to deal with the question? I'm not saying we have a perfect answer, because there's not a perfect answer on our side. There's not a perfect answer on their side. But there's a best answer. And I suggest that the best answer is to let the legal issues decided by the Court that gets tons of patent issues, that has a lot more of experience, as Justice Alito mentioned in one of the points that he made, rather than district court judges who may get a few cases, may get a lot of cases, depending on what district you're in. Roberts. Roberts. Well, what about Judge Moore's point that when you're talking about pure issues of patent law, maybe you're right, but when you're talking about baselessness, that's something that the district courts actually have more experience with, whether it's under EJA, whether it's under AEDPA, whether it's under qualified immunity. That's an issue they see all the time. So maybe they're more expert than the Federal Circuit. Your Honor, on the question broadly of objective baselessness, one might say that is so. But on the question of objective baselessness in a patent context, in a 285 context, where you've got legal issues, where you've got claim construction issues, they are certainly not better situated than the Federal Circuit. And I submit that certainly claim construction is a perfect example, and the government in this case acknowledges that claim construction, as it calls it, pure claim construction — pure legal issues, claim construction, is reviewed de novo. So that is a perfect example of how district courts can disagree. And this case is a poster child for that, because we had two different courts going two different ways on exactly the same point, exactly the same issue. And the Pierce case raised — there are other considerations involved. There are a lot of considerations involved, but others in terms of which tribunal is better situated. And the Pierce case pointed out that the size of the fee involved can be very important. And I'd like to address that just very briefly. The size of the fee involved in patent cases, as my daughters would say, humongous. Some of — I've been in two cases where the legal fees were $30 million. And when you've got legal fees like that — Scalia, you've got to stop charging such outrageous fees. That's the way it used to be with you, Your Honor. Oh, no. The fact is, when you've got fees like that, there is going to be an appeal. Typically, the appeal will be consolidated with the merits appeal. Typically, the court will be dealing with the issues, both of them in the same case. And as Judge Dyke pointed out, having reviewed the merits decision, the 285 decision often involves the same kind of questions. And it is not an enormous burden on the courts to do that. And given the amount of the fee, there's going to be an appeal when you've got large legal fees, regardless of the standard of review. So you're not — I don't think you're going to get a meaningful number of additional appeals that you otherwise would not get. And the fact is that the size of the fees was independently noted in Pierce as a factor. On the Rule 11 issue in Cooter, the — this Court talked about the fact that the district courts were best suited to deal with those cases because they were familiar with the local practices. The whole purpose of the Federal Circuit is not to be concerned with local practices, but to be concerned with national practices. Ginsburg's two of the items that you mentioned, one was venue and the other was claim preclusion, issue preclusion. The Federal Circuit is no more expert in those areas than a district court would be. On what kind of issues, Your Honor? The — you mentioned the venue question. Yes. And I was surprised. The Court said, well, that's for the Pennsylvania court to sanction. Yes. But you, I'm sure, have read the Knoxell case in the D.C. Circuit. Written by you, Your Honor. One of the problems there, one of the conduct that was considered unreasonable was suing in a distant forum, very far from where the defendants operated. And claim preclusion and issue preclusion come up in all kinds of cases. So there's nothing expert about the Federal Circuit on those issues. Your Honor, I have to acknowledge that on an issue of whether or not a conduct in a different circuit should be sanctionable in another circuit, the Federal Circuit is certainly not more expert on that kind of an issue than another court. That is merely an example of what happened in this particular case. I will note that the Federal Circuit cited a number of cases which held exactly that. And moreover, what happened in this case was that even the district court, Judge Means in the Northern District of Texas, noted that the Pennsylvania district court itself did not seem to place very great reliance on it. It probably was the least significant of all the factors in the case. And so I would say it is merely an example of a legal issue. And there will be some legal issues in which the Federal Circuit may not be more expert than others, but there will be a lot of legal issues, since we're dealing with conduct in patent cases, on which the Federal Circuit is the most expert court. And in any event, we're talking about how can we get uniformity of decision-making in the 285 area, and you've got both Rule 11 and the EJIC cases went to 13 circuits. The 285 issues go to one circuit. So it is much better to have a single court ruling on those questions than to have multiple district courts. Scalia. Once you have a statute that confers discretion on the district court, you don't expect uniformity of decision-making. It gives the district judge a broad discretion, and some will come out at the top and some will come out at the bottom, and they'll all be affirmed by the court of appeals. So what makes you think that this statute, which clearly confers discretion, envisions uniformity on the part of the district courts? It seems to me it quite clearly doesn't. Let me adjust that, Your Honor. There's a lot of argument in the opposing briefs on the textual issue and the legislative history, and they cite the legislative history of Section 70, the predecessor statute in 285, and they talk about the reviser's note and P.J. Federico's commentary as to what the new words meant. And the new words meant that they were focusing on Section 70 as it had been interpreted by the courts. So what do you see when you look at the courts? We have – I have examined every appellate decision from 1946 to 1952 dealing with Section 70. There are 19 of them, and not a single one said legal issues are reviewed with deference. Not a single one. A lot of them used discretionary language, but none said legal issues are reviewed with deference. And moreover – Well, you acknowledge that a lot of these cases, and probably most of these cases, do not involve exclusively legal issues, right? Exactly, Your Honor. And so in all of those cases, you're not going to get uniformity, because you acknowledge that in the non-legal issues, there is discretion in the district court. So you're going to have some district courts coming out some ways, other district courts coming out the other way, and they'll all be affirmed. So it seems to me this does not strike me as an area where Congress expected uniformity. You're creating uniformity in one narrow aspect of this decision, that involving legal claims, but there are many other aspects of the decisions that will destroy whatever uniformity you're trying to achieve. Your Honor, I hadn't finished my point, so let me just finish it, which is a response to your point, and that is, these 19 cases between 1946 and 1952, many of them gave a test, and they said the issue is abusive discretion or, the disjunctive or, a legal error. And so all of these cases, none of them said legal issues are reviewed deferentially. And all I'm saying is that if you look at the legislative history, if you look at the textual change of the statute, those cases in between were concerned that the district courts were construing with deference too loosely, and they tightened it up with the exceptional case language. But they also said that legal questions are reviewed de novo. And all I'm saying is, if you look at the statute, we want the district courts to rule on the facts. We want the Federal Circuit to give deference to their ruling on the facts. But when they get into the legal area, when they make legal decisions, we think it should be reviewed de novo. Breyer. The problem is the one, I think, that really seems to me at the heart of what you have to decide. Is it worth saying to the court of appeals, start distinguishing between which of the two categories it falls into? Because the statement that you read, most lawyers would agree with that statement as a general principle. And then the question becomes, well, it's work to decide whether this is purely legal or whether it's legal-factual mixed, and sometimes it's one and sometimes the other, and there's really no key to it exactly. So what you're doing is saying in an area where there are a lot of the deferential kind and some of the non-deferential kind, we want to say the Federal Circuit and all the district courts have to stop and figure that thing out, while the other side says, look, just leave it to the district court and tell them to review. Is this simpler? What do you say? Dabney. Justice Breyer, my response is that in many cases, there won't be a problem distinguishing between law and fact. When there is a problem, there will be some cases where there may be difficulty distinguishing between law and fact. And what Pierce says and what Cooter says and what a lot of cases say is which is the best tribunal, the district court or the appellate court, to deal with it? And all I'm saying is there are all these factors. Sotomayor, I'm sorry. I'm a little confused. With respect to winning or losing the case, you're going to get de novo review, because the Federal Circuit here looked at the claim construction. Under de novo review, agreed with the district court that it had construed the claim properly and that you lost. So you got de novo review. The issue on a reasonable ground to pursue the litigation, whether it was objectively reasonable or not, I think that's Justice Breyer's point, which it generally has factors that are independent of winning or losing. And that's why I kept going back to what the district court said in this case, which you seem to ignore. It at one point recognizes that your claim was a difficult one, but it says that doesn't excuse the fact that you maintain the 52C claim, the one at issue here, even after both the master, special master, and your expert had said a particular claim was unsustainable. And it continued with a long example of behavior examples, multiple ones, that it found unreasonable, having nothing to do with the ultimate reasonableness of your last argument before the appellate court. So, again, I ask the question, why should this objective reasonableness be considered a pure question of law? Because it's not about right or wrong and legal answer. It's about behavior during litigation. Kneedler, Your Honor, there are two facets to the answer I would give to that question. One is that all of the points you made about what the district court found were not issues on appeal. The district court found lots of things, but the four issues that went up on appeal did not deal with all the facts you are talking about. They dealt with legal issues. There was no pre-filing investigation issue. The Federal Circuit expressly found that in a footnote in its opinion. There was no pre-filing investigation issue in the final decision on appeal. Because the district court made multiple decisions. One was a Rule 11 decision in which he didn't provide a safe harbor for anybody. And we went in and we asked him to reconsider it, and he changed his opinion and dropped everything against the attorneys. What went up to the court were four issues, and they were four legal issues. And all I'm saying is that Scott v. Harris and Justice Souter, in a concurring opinion in the PRE case, said the same thing, that objective reasonableness is a legal issue reviewed de novo. And if you want uniformity, if you want predictability, the best way to avoid chilling the void, chilling not only patentees, but accused infringers from being willing to go to court for fear that they may have to pay $30 or $20 or $10 million, and the accused infringer from defending against it, is to have predictability, to have uniformity in decision-making, which you get from having a single court reviewing those cases, and that single court is the Federal Circuit. And I submit that those are the two answers to your questions. I hope I've satisfied you. If there are no further questions, I rest. Roberts. Thank you, counsel. Mr. Katyal, you have 9 minutes remaining. Thank you. I'd like to pick up on Justice Sotomayor's question about the facts of this case, because I think what you heard from Mr. Dunner illuminates our position on why the Federal Circuit's de novo standard is so problematic. We warned, of course, that the de novo standard would become a magnet for litigation and encourage 285 losers to roll the dice, hoping that they can repackage a factual dispute as a legal one in the court of appeals. And Pierce and Cooter warn against that and say that's a waste of resources, as Justice Breyer, you were picking up on. And, Justice Sotomayor, they say you've already had a merits determination, as the one here. This case proves that. You heard Mr. Dunner say, quote, there were no factual issues in this case, and he talks about the Trigon ruling from the Eastern District of Virginia. As the district court here found, Petition Appendix 63A, Trigon was irrelevant because the question was infringement, not claim construction, and that was why sanctions were imposed. And if there's any doubt, here's what Olcair's own lawyer told the Federal Circuit in 2009. These are his opening words, quote, ''Summary judgment was granted at the district court in this case for two reasons. First, it was held there was a lack of evidence from which a reasonable finder of fact could determine the step of 52C. And secondly, the district court held even if there was evidence that step 52C was performed, there was insufficient evidence of direction or control. '' Question from the Court. This really seems like it's a claim construction issue for us as to the meaning of this claim. Answer from Olcair's lawyer, ''I would disagree that claim construction ought to be revisited at this level. In 1999, this Court expressly stated it was inappropriate to sui sponte revisited.'' Now, I'm sorry to belabor the facts here, but I think they illustrate the wisdom of Justice Scalia's opinion in Pierce as followed by Cooter and Kuhn, which is clever lawyers can always make arguments on appeal, make them look legal when they were factual. This case is example A of that. Now, my friend on the other side has said that there wasn't history from 1946 to 1952. We encourage the Court to look to the cases cited at pages 11 to 13 of our brief, and in particular to look at Orison v. Hoffberger, a Fourth Circuit case, which says that in evaluating whether there's, quote, ''no reasonable ground for the prosecution of a motion,'' the Court says it, quote, ''cannot be said there was abuse of discretion.'' In many of these cases, they refer to the abuse of discretion standard. And, of course, Mr. Dunner is right that if it's a pure issue of law, that is something as to which there is indifference. But when the question looks, as it does here, as it does in 285 cases about objective baselessness, whether a litigating position was reasonable, after the fact, in collateral attorney fee litigation, this Court has always said, in all of these cases, that abuse of discretion deferential review is appropriate. Now, Justice Alito, you had referred to the size of the award here, and to be sure, it is different than Pierce. It's not different, of course, than Cooter, because in Cooter we're talking about Rule 11 sanctions, which can devastate an attorney's livelihood. And nonetheless, the Court in Cooter said they would apply deferential abuse of discretion review there. I think the best answer to that is Kuhn itself. In Kuhn, the stakes were really high, jail time. And what the Court said is, defer to the district court, because the district court has the best perspective, the kind of bird's-eye view, a front seat on litigation. And that's why this case is different than, for example, Scott v. Harris or, Justice Alito, the qualified immunity cases. Because in both of those, those questions involve things as to which the district court doesn't have a courtside or ringside, whatever term you want to use, seat. They're not present. They're not there at the scene of the crime. They're not there when law enforcement is conducting whatever operation or something like that. Scott v. Harris, same thing. It's not a qualified immunity case. It's a summary judgment case. And the words, as our brief points out at page 24, say, if there is no factual dispute, then you evaluate it on the law. We agree with that. The question is, here, where there are factual disputes, as there are in all objective baselessness cases, what is the appropriate standard? This Court's answered it several times in Pierce, Cooter and Coon, unitary abuse of discretion review. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.